[Sac. No. 7959. In Bank. Apr. 10, 1974.]

ISABEL ADAMS et al., Petitioners, v.
DEPARTMENT OF MOTOR VEHICLES et al., Respondents;
ANTHONY J. STELLATO, SR., et al., Real Parties in Interest.

## Counsel

Robert Chartoff and Alan F. Neckritz for Petitioners.

Evelle J. Younger, Attorney General, and Frank A. Iwama, Deputy Attorney General, for Respondents.

Wallace O'Connell and Partridge, O'Connell & Partridge for Real Parties in Interest.

Sheppard, Mullin, Richter & Hampton, George R. Richter, Jr., and William M. Burke as Amici Curiae on behalf of Respondents and Real Parties in Interest.

## OPINION

### CLARK, J.—

#### Background

Petitioners challenge the constitutionality of California's garageman's labor and materials lien provided for by Civil Code sections 3068, subdivision (a),[1] 3071,[2] 3072,[3] 3073,[4] and 3074.[5] These provisions, in conjunc-

[1]Section 3068, subdivision (a), provides: "Every person has a lien dependent upon possession for the compensation to which he is legally entitled for making repairs or performing labor upon, and furnishing supplies or materials for, and for the . . . repair . . . of . . . any vehicle . . . subject to registration under the Vehicle Code . . . ." Subdivision (b) provides that repairs in excess of $300 must be consented to in advance by the owner, and written notice must be given by the person claiming the lien.

[2]Section 3071 provides: "If the lienholder is not paid the amount due, and for which the lien is given, within 10 days after the same becomes due, then the lienholder may proceed to sell the property . . . at public auction."

[3]Section 3072 reads in part: "Prior to any such sale the lienholder shall give at least 10 days but not more than 20 days notice of the sale . . . . Prior to the sale of any vehicle to satisfy any such lien, 20 days notice . . . shall be given to the legal owner and to the registered owner of the vehicle . . . and also to the Department of Motor Vehicles . . . . The department shall in like manner immediately notify the legal owner and the registered owner of the proposed sale, but failure on the part of the department to give such notice shall not affect the validity of the sale . . . ." The section also provides that, if there are funds remaining after the lien has been paid and the legal owner cannot be located, the funds are deposited with the Department of Motor Vehicles.

[4]Section 3073 provides that "[w]hen the lienholder can certify under penalty of perjury that the value of the vehicle subject to the lien does not exceed two hundred dollars ($200), the lienholder may sell such vehicle at public sale, upon the giving of notice as provided in this section. At least 10 days before the sale, the lienholder shall notify the legal owner, the registered owner and the department by registered mail [or its equivalent] of the time and place of the sale. At least 10 days before the sale, the lienholder shall also post a notice of the sale on a conspicuous place on the premises where the vehicle is stored, giving the date of the sale and a description of the vehicle . . . ."

[5]Section 3074 provides that "[w]ithin 20 days after the sale of any vehicle under the authority of section 3071, the legal owner may redeem such vehicle upon the payment of the amount thereof [sic], all costs and expenses of said sale, together with interest on said sum at the rate of 12 per cent per annum from the due date thereof or the date when the same were advancd until the repayment. [¶] This section shall not be applicable to vehicles sold under the authority of Section 3073."

tion with section 5909, subdivision (a), of the Vehicle Code,[6] authorize an unpaid garageman to retain and sell vehicles to which he has made repairs and require the California Department of Motor Vehicles (department), upon proof of the lien sale and notice to the owner, to transfer registration of the car to a purchaser without prior hearing.

Petitioners contend the state's failure to provide the owner a hearing either at the time of the seizure of the vehicle or prior to the lien sale and title transfer violates the requirements of due process guaranteed by the Fourteenth Amendment to the United States Constitution and article I, section 13, of the California Constitution. Petitioners ask us to hold the garageman's lien statute invalid and issue a writ of mandamus[7] ordering the department and other respondents[8] not to participate in the garageman's

---

[6]Section 5909, subdivision (a), of the Vehicle Code provides: "Whenever the title or interest of any owner or legal owner in or to a vehicle registered under this code passes to another otherwise than by voluntary transfer the new owner or legal owner may obtain a transfer of registration upon application therefor and upon presentation of the last certificate of ownership and registration card issued for the vehicle, if available, and any instruments or documents of authority or certified copies thereof as may be required by the department, or required by law, to evidence or effect a transfer of title or interest in or to chattels in such case."

[7]A word is in order concerning the procedural posture of this case. Petitioners initially filed their petition for writ of mandate in this court. This court transferred the case to the Court of Appeal, which denied the petition wihout opinion. Petitioners returned to this court by petition for hearing, which was granted on 15 November 1972.

While either this court or the Court of Appeal may entertain original jurisdiction in mandamus (see Cal. Const., art. VI, § 10, and Cal. Rules of Court, rule 56(a)), an appellate court should grant the relief sought only when " 'the issues presented are of great public importance and must be resolved promptly.' " (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 674-675 [94 Cal.Rptr. 279, 483 P.2d 1231]; *County of Sacramento* v. *Hickman* (1967) 66 Cal.2d 841, 845 [59 Cal.Rptr. 609, 428 P.2d 593].) In recognition that original proceedings in appellate courts are truly extraordinary, rule 56(a) requires that "[i]f the petition might lawfully have been made to a lower court in the first instance, it shall set forth the circumstances which, in the opinion of the petitioner, render it proper that the writ should issue originally from the reviewing court." The averments of the petition for writ of mandate (that the garageman's lien statute works great hardship on poor persons and that the question of the statute's validity is one of statewide significance) are scarcely adequate justification for bypassing the lower courts. If these may suffice, this court will, in such proceedings, become a court of first, not last, resort. As a consequence of petitioners' impatience, this court is denied the record which it would otherwise have had. If the case had not already been briefed and argued here and if the issues presented were not so clearly destined to come before this court (probably sooner than later; see, e.g., *Quebec* v. *Bud's Auto Service* (2d Civ. 41502), filed 10 May 1973, per Thompson, J.; rehg. granted 1 June 1973), it would not be inappropriate to deny a peremptory writ for procedural reasons. In any event, precipitate resort to the appellate courts will not be encouraged in the future.

[8]The other respondents are Robert C. Cozens, Director of the Department of Motor Vehicles; John McLaughlin, Registrar of Vehicles and Chief of the Division

lien sales or to transfer or record the transfer of the interest of any owner of a vehicle seized and sold pursuant to the code sections in question.

Petitioner Adams sues as an individual and, pursuant to section 382 of the Code of Civil Procedure, as representative of all persons similarly situated. Following repair of her car, dispute arose between petitioner Adams and real party in interest Stellato over the amount of the bill. When petitioner refused to pay for the repair, Stellato retained possession of the car, later selling it pursuant to the statutory scheme. The buyer, real party in interest Moseley, then filed an "Application for Registration of Vehicle Sold at Lien Sale" with the department. Petitioner Adams now seeks to restrain respondents' recording of title transfer both for her car[9] and for any other car purchased through lien sale.

Petitioner Pineda joins in this action as a taxpayer challenging the constitutionality of the expenditure of public funds in enforcement of the garageman's lien law. (See Code Civ. Proc., § 526a; *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 268 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)[10]

### General Principles

In a series of cases decided since 1969, the United States Supreme Court and this court have held procedural due process requires the giving of notice and an opportunity for hearing before the state, in aid of a creditor, may deprive a debtor of any significant property interest, including temporary use and enjoyment. Exceptions to this principle are justifiable only in "extraordinary circumstances." (*Fuentes* v. *Shevin* (1972) 407 U.S. 67, 90 [32 L.Ed.2d 556, 575, 92 S.Ct. 1983].)

---

of Registration of the Department of Motor Vehicles; and Edith Burke, Supervisor of Involuntary Transfers Unit No. 17, Division of Registration, Department of Motor Vehicles.

[9]While a contract of repair signed by Adams provided that "an express mechanic's lien is hereby acknowledged on above car . . . to secure the amount of repairs thereto," little reliance is placed on the writing by the parties. Furthermore, its language does not appear to authorize the procedure followed by Stellato.

[10]Pineda appears to have more than a taxpayer's interest in this case. He bought new tires for his car and had them mounted but was unable to pay for them and for various repairs performed on his car by the seller of the tires, allegedly without his authorization. His car was retained by the seller of the tires (not a party here) but Pineda was able to obtain financing to pay the seller's bill and free his car. Pineda seems to have fallen behind in his payments to the lender (who was recommended by the seller of the tires) and may have lost or be in danger of losing his car a second time—the record is not clear on this point. The status of Pineda's car is not at issue here, however, since he sues as a taxpayer. (See *Blair* v. *Pitchess* (1971) 5 Cal.3d 258, 269-270 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206].)

In applying this principle, courts have invalidated statutes providing for wage garnishment (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]; *McCallop* v. *Carberry* (1970) 1 Cal. 3d 903 [83 Cal.Rptr. 666, 464 P.2d 122]), claim and delivery (*Blair* v. *Pitchess, supra,* 5 Cal.3d 258), prejudgment attachment of checking accounts (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal. Rptr. 709, 488 P.2d 13]),[11] and replevin of household goods (*Fuentes* v. *Shevin, supra,* 407 U.S. 67).[12] Of course, the principle established by the above-cited cases applies only when a taking involves significant action by the state. (*Evans* v. *Newton* (1966) 382 U.S. 296, 299-301 [15 L.Ed.2d 373, 377-378, 86 S.Ct. 486].)

### State Action

In the cited cases state action was clear since the seizure was effected by state officers or court process. ■ But such direct involvement is not. necessary to a determination of state action, for private conduct may become so entwined with governmental action as to become subject to the constitutional limitations placed on state action by the Fourteenth Amendment to the United States Constitution and article I, section 13, of the California Constitution. (*Adickes* v. *Kress & Co.* (1970) 398 U.S. 144 [26 L.Ed.2d 142, 90 S.Ct. 1598]; *Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627]; *Evans* v. *Newton, supra,* 382 U.S. 296; *Burton* v. *Wilmington Pkg. Auth.* (1961) 365 U.S. 715, 722 [6 L.Ed.2d 45, 50, 81 S.Ct. 856].)

The vehicle service lien and the procedures for its enforcement are created and governed by statute. The procedure is administered by the Department of Motor Vehicles, and transfer of title to the lien sale purchaser is ultimately recorded by the department. Thus, although a private individual retains and sells the car, his power to do so arises from and is subject to specific provisions of state statute and his exercise of that power is supervised by the department. In this case, the department sent a notice to petitioner Adams and sent forms to Stellato describing the procedures

---

[11]For a discussion of the legislative response to *Blair* and *Randone*, see Trost, *Revival of Prejudgment Remedies in California: The New Attachment and Claim and Delivery Statutes* (1973) 48 State Bar J. 26; see also Comment, *Attachment in California: Another Round of Creditors' Rights and Debtor Protection,* 20 U.C.L.A. L.Rev. 1015.

[12]For analysis of the development and application of the due process clause to prejudgment remedies, see: Comment, *The Constitutional Validity of Attachment in Light of Sniadach* v. *Family Finance Corp.* (1970) 17 U.C.L.A. L.Rev. 837; Note, *Attachment in California: A New Look at an Old Writ* (1970) 22 Stan.L.Rev. 1254; Note, *Some Implications of Sniadach* (1970) 70 Colum.L.Rev. 942.

for conducting the sale and for recording the sale. The department supplied Moseley an "Application for Registration of Vehicle Sold at Lien Sale" and an additional form requesting a statement of the relevant facts. In the absence of petitioners' challenge the department would ultimately have recognized and recorded transfer of title from Adams to Moseley.

Respondents and Stellato argue that the retention and sale of petitioner Adams's car were authorized by contract and were effected by a private individual without the aid of court process or personnel. As already noted, however (see fn. 9, *ante*), the repair contract did not by its terms provide for seizure or sale, so that Stellato's actions, if authorized at all, were permitted only by statute. Secondly, although the seizure and sale were effected by Stellato alone without the aid of state personnel, that fact is not dispositive, as the cases cited above make clear. (See, e.g., *Burton* v. *Wilmington Pkg. Auth., supra,* 365 U.S. 715.) Moreover, the state's role is not merely "ministerial" (as Stellato characterizes it) since the state through the department actively supervised preparations for the sale. Even more importantly, by statutes authorizing and empowering Stellato to sell the car and requiring the department to recognize and record transfer of title, the state delegated to Stellato the traditional governmental function of lien enforcement[13] and enabled him to pass good title to an automobile he did not own. (See *Reitman* v. *Mulkey, supra,* 387 U.S. 369; *Evans* v. *Newton, supra,* 382 U.S. 296.)

Respondent relies heavily on *Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163 [32 L.Ed.2d 627, 92 S.Ct. 1965], where the United States Supreme Court held that the issuance of a liquor license to a private club did not "sufficiently implicate the State in the discriminatory policies of Moose Lodge so as to make the latter 'state action.' . . ." *Irvis* is distinguishable, however, since there the state simply licensed the lodge to sell liquor and was not involved in and in no way encouraged the acts of discrimination complained of. Here, in contrast, the lien is expressly provided for by statute, its execution by sale is authorized by statute, and a state agency oversees the sale and records the transfer of title.

■ We conclude, therefore, that the state's involvement in the imposition and enforcement of the garageman's liens constitutes state action.

---

[13]At common law, the possessory lienholder had no power of sale. Any sale in attempted foreclosure of the lien would have been regarded as conversion. (See Brown, Personal Property (2d ed. 1955) § 119, p. 589.) The remedy of the lienholder was to bring an action on his claim and to obtain a writ of execution on the resulting judgment. (See *White* v. *White* (1936) 11 Cal.App.2d 570 [54 P.2d 482].)

## *Existence of Extraordinary Circumstances*

As noted above, summary procedures may be justified in certain "extraordinary circumstances." ■ The garageman's lien law, however, is not limited to such circumstances, nor does respondent appear to contend otherwise. In *Shevin, supra,* 407 U.S. 67, 91-92 [32 L.Ed.2d 556, 576-577], the court gave examples of summary procedures which may satisfy the requirements of due process: ". . . the Court has allowed summary seizure of property to collect the internal revenue of the United States, to meet the needs of a national war effort, to protect against the economic disaster of a bank failure, and to protect the public from misbranded drugs and contaminated food." (Fns. omitted.) The garageman's lien law applies broadly to labor and materials furnished in the repair of all motor vehicles and is not limited to situations comparable to those enumerated in *Shevin.*

## *Compliance with Due Process Standards*

### (a) Issues

We must next determine whether the garageman's lien law violates due process. It could do so in two respects.

First, the lien law permits interim retention of the automobile without prior notice or hearing, pending payment or sale of the car.

Secondly, the lien law permits the garageman to permanently deprive the owner of his automobile, and it is open to question whether there is adequate opportunity for prior hearing.

### (b) Interim Retention

■ We do not believe interim retention of the automobile violates the principle of *Sniadach.*

In none of the cases bearing on temporary deprivation of use and enjoyment of property did the creditor have a possessory interest of the same character as a garageman's interest in a car left for him to repair with his own labor and materials. Usually the claim of an attaching or garnisheeing creditor is a general claim unrelated to the specific property seized. And while the claim of a conditional vendor or chattel mortgagee arises out of a transaction involving the seized chattel itself, the interest of such creditor in the seized chattel is ordinarily purely pecuniary; the creditor has not, subsequent to the acquisition of the chattel by the vendee or

mortgagee, mixed his own labor with it, nor, more significantly, has he added to it materials to which he originally had a right of possession.[14]

Furthermore, even assuming that the possessor of a garageman's lien does not have an interest in any sense superior to that of a conditional vendor or chattel mortgagee, or even to that of an attaching creditor, the above-cited cases are distinguishable on the ground that creditors there sought assistance of a state officer or proceeded under color of state law to alter the status quo either by dispossessing debtors or by diverting rights or benefits owed the debtors by third parties. Here, however, the creditor is in rightful possession at the time he asserts his lien. To strike down the garageman's possessory lien would be to alter the status quo in favor of an opposing claimant; the garageman would be deprived of his possessory interest precisely as were the debtors in *Shevin* and *Blair*.[15]

### (c) Sale

■ Since, in the absence of extraordinary circumstances, due process requires notice and hearing be accorded before the state may temporarily take property from a debtor, it follows a fortiori that the same requirement must be met for permanent deprivation. There is no provision in the garageman's lien law for hearing prior to the sale of the car and the transfer of its registration. The question is whether other legal procedures available to the owner are sufficient to satisfy the notice and hearing requirement.

Section 3071 of the Civil Code provides that the owner has 10 days in which to pay the amount due before the garageman may initiate proceedings to sell the vehicle. The next 2 sections provide for at least 10 days' notice to the public, either by publication or by posting in conspicuous places and 20 days' notice to owners by registered mail, reduced to 10 days if the garageman certifies under penalty of perjury that the car is worth less than $200. Thus, in as few as 30 days following the owner's

---

[14]Stellato affixed materials valued at $175 to petitioner Adams's car. Petitioner Pineda had tires valued at $110 attached to his car.

[15]Implicit in *Shevin* and *Blair* is the policy of honoring that possessory right actually vested in possession, at least until conflicting claims of possession have been judicially resolved. That policy is consistent with the general policy of the law. Thus even a holdover tenant, though technically a trespasser, is entitled to continued possession of realty as against the landlord until the latter has established his right to possession in court. (See 2 Witkin, Summary of Cal. Law (1960) Real Property, § 287, p. 1113; *op. cit.*, Torts, § 70, p. 1244.) And the owner of a chattel may generally repossess it from a converter only if he can do so without breach of the peace; he is privileged to use force in recaption only if he reacts promptly to the taking and is in fresh pursuit of the converter. (See Rest., Torts, § 103; 2 Witkin, Summary of Cal. Law (1960) Torts, § 71, p. 1245.)

initial refusal to pay (or as few as 20 days if the car is worth less than $200), a lien sale may be held. Section 3074 of the code provides that within 20 days after the lien sale the legal owner may redeem his automobile upon payment of repair costs and the expenses of sale together with interest. This period of redemption, coupled with the 30-day presale period, gives the owner of a vehicle worth more than $200 50 days in which to obtain hearing. Section 3074 also provides that the owner of a vehicle worth less than $200 has no right of redemption. Thus, such an owner may irretrievably lose his car after only 20 days.

Although the garageman's lien law makes no provision for hearing prior to sale and transfer of a retained vehicle, respondents have suggested that the owner of the car "has the opportunity to institute a civil action against [the garageman] to contest the propriety of the sale of the car." Respondents do not, however, indicate what kind of action would be appropriate under the circumstances. Presumably they have reference to an action for conversion or for declaratory relief.

However, neither of these actions will suffice. Since the chattel may be sold as soon as 30 days after the garageman's first demand for payment and may be placed beyond recall 20 days thereafter, there is no assurance, and indeed little probability, that trial of a contested lien claim could be held within the minimum period preceding transfer to the buyer. (See Cal. Rules of Court, rules 220 and 509.) California law does not provide for accelerated hearing of contested lien claims, and only by resort to temporary restraining orders and injunctions could sale and transfer be halted pending adjudication, at least if events take their ordinary course. Since temporary injunction is an extraordinary remedy and is thus discretionary (see 2 Witkin, Cal. Procedure (2d ed. 1970) Provisional Remedies, § 78, pp. 1516-1517), it lacks the certainty necessary to insure a hearing prior to permanent deprivation. A motion to specially set might be made, but its granting lies within the discretion of the trial court (see Cal. Rules of Court, rules 225 and 513) and the requisite certainty of relief is again lacking. While an action for conversion of a car worth less than $500 would be heard in small claims court after 10 days and no later than 30 days following filing of the action (see Code Civ. Proc., § 117d), even in that situation the owner would have to act immediately (i.e., the day the garageman asserted his lien) in order to insure his rights would be protected. Furthermore, a small claims action is precluded if the car is worth more than $500; if it is worth less than $200, the owner need receive only 10 days' notice following the initial 10-day period for payment and has no right of redemption. He thus will have no assurance of hearing prior to loss of all rights in the vehicle.

DISPOSITION

■　Because sections 3071, 3072, 3073, and 3074 of the Civil Code permit involuntary sale and transfer of a vehicle without affording the owner an opportunity for hearing, they deprive owners of due process of law and are, therefore, invalid.　■ ■　Section 3068, subdivision (a), of the Civil Code and section 5909, subdivision (a), of the Vehicle Code are not affected by the invalidity of the above sections, the former for reasons already discussed and the latter because it becomes operative only when title to an automobile has already passed by involuntary transfer and does not purport to empower anyone to pass title in violation of the Constitution.

Since misunderstanding of our decision could cause unnecessary economic dislocation, we now indicate what we do not hold.

We do not invalidate the entire statutory scheme.　■　A garageman still may retain possession of a car when the owner, for whatever reason, declines to pay for its repair. But the garageman may no longer sell the car to satisfy his claim. If the owner remains unwilling or unable to pay the amount claimed, the parties are relegated to such remedies as are provided by common law[16] or statute, consonant with requirements of due process.

We do not hold, as respondents fear we might, that a hearing preceding a permanent taking of the owner's automobile must be conducted by the Department of Motor Vehicles.[17] The Legislature, if it determines that common law remedies are inadequate, or if it feels compelled under the state Constitution,[18] may specify remedies in addition to those available.

The alternative writ is discharged; the peremptory writ is granted. Respondents are ordered not to process or otherwise act on applications for

[16]See, e.g., footnote 13 above.

[17]Furthermore, we do not reach the validity of creditors' remedies provided by private agreement. Thus nothing said herein is intended to affect the validity of foreclosure under deed of trust providing for private sale. Nor do we touch on the propriety of private repossession where the parties have contracted therefor. We likewise decline to rule on the validity of other forms of artisan's lien provided by statute in California. (See Civ. Code, §§ 3051-3066; Code Civ. Proc., § 1208.61 et seq.; Veh. Code, § 9915; and Harb. & Nav. Code, § 490.) These are not before us.

[18]Article XX, section 15, of the California Constitution provides that "[m]echanics, materialmen, artisans, and laborers of every class, shall have a lien upon the property upon which they have bestowed labor or furnished material for the value of such labor done and material furnished; and the Legislature shall provide, by law, for the speedy and efficient enforcement of such liens."

transfer of registration pursuant to any lien sale conducted under the sections of the Civil Code herein declared unconstitutional.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.