[Civ. No. 54147. Second Dist., Div. Three. Mar. 20, 1980.]

JOSEPH J. MARTIN, Plaintiff and Appellant, v.
RAYMOND J. HEADY et al., Defendants and Respondents.

**COUNSEL**

Murphy & Johnson and Scott L. Johnson for Plaintiff and Appellant.

Harold O. Adams for Defendants and Respondents.

OPINION

COBEY, Acting P. J.—Plaintiff, Joseph J. Martin, appeals from a judgment for defendants, Raymond J. Heady and Heady Aircraft Corporation, Inc. (dba Aircraft Associates), in his damage action for conversion of a customized DC-3 airplane, by means of an allegedly unlawful lien sale thereof in December 1971.

██ The fundamental question presented by this appeal is whether the lien sale provisions (Code Civ. Proc., §§ 1208.65, 1208.66, 1208.67 and 1208.68) of the aircraft lien law are constitutional. We intend to hold that they violate the procedural due process provision of the California Constitution (art. I, § 7, subd. (a)) for reasons that follow.[1]

### STATEMENT OF FACTS

In 1966 plaintiff stored with defendant, Aircraft Associates,[2] at the Long Beach Airport a customized executive DC-3 belonging to Electro Home Products, Inc., a corporation, the stock of which was apparently owned entirely by plaintiff and another individual. Electro Home Products, Inc. had purchased the airplane that year for $50,000. It then had but one engine. The stockholders of Electro Home Products, Inc. split up in January 1970, and the next month plaintiff bought this aircraft from his former business associate, through an intermediary, for $8,500, Electro Home Products, Inc., however, remained the federally registered owner of the aircraft.

On June 5, 1970, the Internal Revenue Service sold the airplane at a public auction sale at Aircraft Associates for delinquent taxes due from

---

[1]Section 1208.67 (the application of the proceeds of the lien sale), by itself, appears free of any constitutional infirmity, but it has no function apart from the other sections which we intend to strike down.

Plaintiff attacks the lien sale at issue here also on the basis that the procedures followed in connection therewith did not meet certain specified requirements of the California Uniform Commercial Code. We do not deal with this contention because section 9102, subdivision (2), of the code expressly provides that the division of the Code on secured transactions does not apply to statutory liens except with respect to their priority over perfected security interests, which is a question that is not involved in this case.

All section references hereafter are to the Code of Civil Procedure unless otherwise indicated.

[2]Aircraft Associates was wholly owned by defendant, Raymond J. Heady, who was its president and sole manager.

Electro Home Products, Inc. The buyer at the auction sale was Atlantic Finance Company and the high bid was $1,700. Defendant, Raymond J. Heady, was present at this sale and bid unsuccessfully on the aircraft at that time. The aircraft still had but one engine. It remained tied down at Aircraft Associates under plaintiff's control. Around this time Electro Home Products, Inc. apparently ceased to do business at its address of 3100 East Seventh Street in Long Beach.

In September 1970 plaintiff apparently decided to put the airplane in flying condition. He agreed to purchase, by a notarized letter of agreement, a rebuilt engine from a third person for the price of $5,500, and he apparently toward the end of the month authorized Aircraft Associates to install the engine and to perform an annual inspection, which was the condition precedent to the issuance of a certificate of airworthiness. Aircraft Associates then prepared a written repair order addressed to plaintiff, in care of National Music Company, P.O. Box 897, Westminster, California, which was the address plaintiff had given defendants. Apparently, however, Aircraft Associates did no work on the airplane until they received $3,000 in two checks by early August 1971. This repair work, totaling in charges $8,158.42, was completed on August 20, 1971. At this time Atlantic Finance Company gave plaintiff a bill of sale to the airplane for a recited consideration of $1,700.[3] Plaintiff then paid $5,000 on the already-mentioned purchase price of $5,500 for the rebuilt engine. On or about September 2, 1971, Aircraft Associates apparently billed plaintiff at P.O. Box 897, Westminster, California, $5,338.42 for the unpaid balance allegedly due them.[4] Plaintiff received this bill.

Plaintiff failed to pay the bill. According to him he had a commitment from Aircraft Associates that his total bill for the engine, its installation and the annual inspection would be $10,400—$5,000 for the engine, $3,000 for its installation, and $2,400 for the annual inspection. Plaintiff and defendant, Raymond J. Heady, thereafter failed to resolve their differences over what was due from plaintiff to Aircraft Associates, essentially, for the foregoing repair work on the airplane.

---

[3]This bill of sale refers to a lien upon the aircraft in favor of Atlantic Finance Company. Such lien was apparently created by a security agreement covering a loan of $26,318.52, which Atlantic made on October 20, 1970 to plaintiff. At the commencement of trial, however, counsel stipulated that Atlantic, a coplaintiff, had no financial interest in the litigation.

[4]This balance did not include the $500 due on the rebuilt engine as that amount was owed to the seller of the engine and not to Aircraft Associates.

In early November 1971, Aircraft Associates obtained a title report on the aircraft showing its federal record owner to be Electro Home Products, Inc., 3100 East Seventh Street, Long Beach, California. Thereafter, on November 11, 1971, Aircraft Associates notified Electro Home Products, Inc., plaintiff, and plaintiff's fellow corporate officer of the contemplated sale at public auction of the aircraft on December 3, 1971. This certified mailed notice (see Code Civ. Proc., § 11) was addressed to the corporation's address of federal record, namely, 3100 East Seventh Street, Long Beach, California, instead of to the billing address of plaintiff that Aircraft Associates had been using, namely, P.O. Box 897, Westminster, California. Aircraft Associates then published once in the Long Beach Reporter, the Long Beach legal newspaper, on November 23, 1971, a notice of the lien sale. They also posted four or five copies of a notice of the lien sale at different places around the airport. The trial court specifically found that before December 1, 1971, plaintiff had actual notice of the lien sale.[5]

On December 3, 1971, Aircraft Associates sold the aircraft at public auction at its place of business at the airport to Raymond J. Heady for the exact amount of the unpaid repair and storage charges of Aircraft Associates, namely, $5,473.42.[6] Thereafter plaintiff failed to exercise within 20 days of this sale his statutory right of redemption, notwithstanding written notice thereof being sent to Electro Home Products, Inc., at 3100 East Seventh Street, Long Beach, California. The aircraft was estimated at or near the time of the lien sale to be worth somewhere between $11,000 and $55,000. Aircraft Associates resold the airplane apparently in April 1972 for $16,000, after putting in another rebuilt engine.

## DISCUSSION

### 1. Conformity to the Procedures of the Aircraft Lien Law

The aircraft lien law (§ 1208.61 et seq.) grants to an aircraft keeper a possessory lien for his repair and storage charges, among other things, against the aircraft serviced. (§ 1208.61.) The portion of this lien in excess of $250 for work or services performed at the request of any person other than the holder of legal title to the aircraft is invalid unless, prior

---

[5]Pursuant to rule 12(a) of the California Rules of Court, we have added the trial court's findings of fact and conclusions of law to the record on appeal.

[6]This amount included three month's unpaid storage charges of $45 a month.

to commencing such work or services, the lien claimant gives actual notice to the legal owner and the mortgagee, if any, of the aircraft and their written consent is obtained before such work or services are performed. The statute specifies the federal registrant of the aircraft as its legal owner. (§ 1208.62.)

In this case the work done and the storage of the airplane was orally authorized by plaintiff who apparently was president of the federal registrant, Electro Home Products, Inc. The lien at issue would, therefore, appear to be valid.

The aircraft lien law further provides that if the lienholder is not paid the amount due him within 10 days after it becomes due, he may proceed to sell the aircraft, or so much thereof as is necessary to satisfy his lien and the costs of sale, at public auction. (§ 1208.65.) Prior to such sale, however, the lienholder must publish a notice of sale for a 10-day period in a newspaper of general circulation published in the county in which the aircraft is situated. (§ 1208.66; Gov. Code, § 6060.) Such publication must be made on each day in which the newspaper is published during the 10-day period. (Gov. Code, § 6062.)

Defendants' publication of notice of the lien sale at issue in this case appears to have been defective. According to the declaration of publication, introduced in evidence, this notice of lien sale was published but once on November 23, 1971, in the Long Beach Reporter, a newspaper which, according to the declaration, is printed and published *semi-weekly* in Long Beach. It seems clear that compliance with the just-mentioned Government Code, section 6062, would require more than one publication of this notice in this particular newspaper during the 10-day period.

The already-mentioned section 1208.66 further provides that, prior to the contemplated lien sale, 20 days' notice thereof by registered mail must be given "to the legal owner as it appears in the registration certificate." As already noted, defendants complied with this requirement exactly, although both the addressee and the address used differed from their current billing to plaintiff.[7] Nevertheless, as already noted, the trial court specifically found that prior to December 1, 1971 (the lien

---

[7]We doubt whether such mailed prior notice of the lien sale was reasonably calculated to give actual notice of the lien sale to plaintiff. (Cf. *Garfinkle* v. *Superior Court* (1978) 21 Cal.3d 268, 283, fn. 22 [146 Cal.Rptr. 208, 578 P.2d 925].)

sale occurred on Dec. 3, 1971), plaintiff had actual notice of the contemplated sale.

As already indicated, by letter dated December 7, 1971, addressed to the just-mentioned federal registrant of the aircraft, defendants, through their counsel, gave written notice of the exact outcome of the lien sale on December 3, 1971, and of the 20-day statutory right of redemption provided by section 1208.68.

2. ■ *Substantiality of the Evidence in Support of the Finding of Plaintiff's Actual Prior Notice of the Lien Sale*

Plaintiff challenges the substantiality of the evidence in support of the finding of actual prior notice to him of the lien sale. We have added to the record on appeal, as authorized by rule 12(a) of the California Rules of Court, the deposition of Eugene R. Russell, the president of Atlantic Finance Company. This deposition was received in evidence below pursuant to the oral stipulation of the parties in open court. Therein Russell testified that plaintiff notified him in November 1971 that the aircraft involved in this action was being lien sold by Aircraft Associates. We regard this testimony as substantial evidence in support of the challenged finding.[8]

3. *The Constitutional Infirmity of the Statutory Procedure*

A. *State Action*

■ It is well settled that the only conduct proscribed by the due process clause of the Fourteenth Amendment of the United States Constitution is conduct that may fairly be attributed to the states. (*Shelley v. Kraemer* (1948) 334 U.S. 1, 13 [92 L.Ed. 1161, 1180, 68 S.Ct. 836, 3 A.L.R.2d 441].) Essentially the same may be said with respect to the reach of the corresponding procedural due process provision of our state Constitution, namely, article I, section 7, subdivision (a), as regards the State of California. (*Garfinkle* v. *Superior Court, supra,* 21 Cal.3d at pp. 281-282.)

---

[8]This conclusion makes nonprejudicial to plaintiff any aforementioned deficiencies in the published and mailed prior notice to him of the lien sale.

The lien sale provisions of the aircraft lien law, namely, sections 1208.65, 1208.66, 1208.67 and 1208.68, constitute a delegation by the State of California of the traditional and exclusively sovereign power of nonconsensual enforcement of a possessory lien by an involuntary sale by the private lienholder, namely, the aircraft keeper. At common law a possessory lienholder possessed no power of sale to enforce his lien. Any foreclosure of his lien by sale would have been regarded, therefore, as a conversion. (*Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 153, fn. 13 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].) Consequently, the procedure prescribed for summary nonconsensual enforcement by sale of the aircraft keeper's statutory lien is solely and exclusively a creature of statute. Stated otherwise, the lien sale statutes before us are in no sense a codification of preexisting common law. They may, therefore, quite properly be viewed as authorizing state rather than private action (cf. *Kruger* v. *Wells Fargo Bank* (1974) 11 Cal.3d 352, 362-363 [113 Cal.Rptr. 449, 521 P.2d 441, 65 A.L.R.3d 1266]), even though there is no participation whatsoever in such a sale by any state personnel, even ministerially. Such sales are both exclusively statutory in origin and nonconsensual in character. Consequently they are unlike private consensual self-help remedies such as nonjudicial foreclosure sales, vehicle repossessions and a bank's exercise of its equitable right of setoff. (*Garfinkle* v. *Superior Court, supra,* 21 Cal.3d at pp. 277, 281; *Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d at p. 157, fn. 17; *Kipp* v. *Cozens* (1974) 40 Cal.App.3d 709, 714-716 [115 Cal.Rptr. 423]; *Kruger* v. *Wells Fargo Bank, supra,* 11 Cal.3d at pp. 359, 362-363.)

■ In holding that aircraft lien involuntary sales constitute state action, we are aware that we are perhaps going slightly beyond the holding of our Supreme Court in *Connolly Development, Inc.* v. *Superior Court* (1976) 17 Cal.3d 803, 815, footnote 14 [132 Cal.Rptr. 477, 553 P.2d 637], with respect to statutory stop notices. Likewise, when that court struck down the lien sale provisions of the garagemen's lien law in the already-mentioned *Adams* v. *Department of Motor Vehicles* decision, it relied at least secondarily on the administrative participation of state personnel in the unconstitutional enforcement procedures. (See 11 Cal.3d at pp. 152-153.) We are also aware that our holding is inconsistent with that of the United States Supreme Court's five-to-three decision (Brennan, J. not participating) in *Flagg Brothers, Inc.* v. *Brooks* (1978) 436 U.S. 149 [56 L.Ed.2d 185, 98 S.Ct. 1729], which upheld the validity of the warehousemen's lien law incorporated by the State of New York into its Uniform Commercial Code. There, the na-

tion's highest court in an opinion authored by Mr. Justice Rehnquist, relied principally for its conclusion that no state action was involved on the theory that the settlement of disputes of debtors and creditors (via an involuntary lien sale) was not traditionally an exclusively public function. (*Id.* at p. 161 [56 L.Ed.2d at pp. 196-197].) The dissent written by Mr. Justice Stevens disagreed. It termed the state's power to order a binding *nonconsensual* resolution of a conflict between a debtor and a creditor exactly the sort of power with which the federal constitutional due process clause was concerned. (*Id.* at p. 176 [56 L.Ed.2d at p. 206].)

The high court of New York, the New York Court of Appeals, in a four-to-three decision in *Sharrock* v. *Dell Buick* (1978) 45 N.Y.2d 152 [408 N.Y.S.2d 39, 379 N.E.2d 1169], agreed with the minority of the United States Supreme Court in the *Flagg* case in holding invalid under the New York Constitution the involuntary sale provision of a garagemen's lien statute.[9] The majority based their holding that the lien sale before them constituted state action primarily upon the following rationale. "Even more fundamentally, the underlying purpose of the sale provisions of the Lien Law—that of conflict resolution—has always been deemed one of the essential attributes of sovereignty. Absent consent of the debtor, the power to fashion the means to order legally binding surrenders of property has always been exclusively vested in the State. Implementation of dispute settlement, irrespective of the strength of the competing interests of the parties, is the function of the judiciary, and is not dependent 'on custom or the will of strategically placed individuals, but on the common-law model' (*Boddie* v. *Connecticut,* 401 US 371, 375). But by permitting the possessory lienor to take those steps necessary to foreclose his lien in a nonjudicial setting where the power of sale is premised on possession alone, the State has permitted the garageman to arrogate to himself the exclusive power of the sovereign to resolve disputes. However strong the interest of the garageman in the vehicle may be, his power of foreclosure has no vitality until it is sanctioned by the State. It follows, then, that such a person vested by the State with the power to resolve unilaterally an otherwise judicially cognizable controversy, is nothing more than a delegate of an exclusively governmental function (cf. *North Ga. Finishing* v. *Di-Chem,* 419 US

---

[9]As already noted, our high court had some four years earlier held such involuntary sale provisions of our garagemen's lien law violative of the procedural due process clause of the United States Constitution. (*Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d at pp. 151, 157.)

601, *supra*; *Fuentes* v. *Shevin*, 407 US 67, 93, *supra*). For this reason, the debtor must be provided with that measure of due process as would be afforded in a court of law." (45 N.Y.2d at p. 162 [408 N.Y.S.2d at p. 45].)

We similarly hold that the sale provisions of our aircraft lien law, which authorizes a private party to deprive a person of his property without his consent, must meet the requirements of the procedural due process provision of the California Constitution, namely, article I, section 7, subdivision (a).

B. *The Lack of a Hearing*

▉ The involuntary lien sale procedures contained in the aircraft lien law are essentially identical to the former involuntary sale provisions of the garagemen's lien law federally invalidated by our Supreme Court in *Adams*. There, our high court gave as its reason for the invalidity of these statutes the fact that they permitted an involuntary sale and a transfer of a vehicle without affording the owner an opportunity for hearing. (*Adams* v. *Department of Motor Vehicles, supra*, 11 Cal.3d at p. 157.) The same is true here as regards the customized DC-3. We, therefore, view the sale before us as equally violative of the corresponding procedural due process provision of our Constitution, namely, article I, section 7, subdivision (a). (Cf. *Kruger* v. *Wells Fargo Bank, supra*, 11 Cal.3d at pp. 366-367; *Garfinkle* v. *Superior Court, supra*, 21 Cal.3d at pp. 281-282.)

DISPOSITION

The judgment under appeal is reversed.

Allport, J., and Potter, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied May 21, 1980.