[No. B098004. Second Dist., Div. Four. Jan. 22, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
AUGUSTINO GAMS, Defendant and Appellant.

## COUNSEL

Michael R. Totaro, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Mary Sanchez and Sally P. Brajevich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BARON, J.**—Appellant was charged with the crime of stalking Linda Salcedo in violation of a restraining order on and between February 14, 1995, and March 10, 1995, in violation of Penal Code section 646.9, subdivision (b).[1] He was convicted by a jury which also found true an allegation that appellant suffered a prior conviction on October 12, 1988, for residential burglary (§ 667, subds. (b)-(i)) and a March 8, 1991, conviction and prison term for terrorist threat (§ 667.5, subd. (b)). He was sentenced to state prison for 10 years.[2]

Appellant appeals on the ground the court committed reversible error by instructing the jury in accordance with the language of section 13710, subdivision (b). Alternatively, appellant requests the case be remanded to permit the court to exercise its discretion to dismiss his "strike" prior under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The court sentenced appellant to the high term of four years which was doubled pursuant to section 667, subdivision (e)(1). The court also imposed two 1-year enhancements pursuant to section 667.5, subdivision (b). However, only appellant's 1991 conviction was charged as a prison prior in an amended information and that is the only such enhancement found true by the jury. On appeal, appellant argues, and respondent concedes, this was error. Accordingly, we will order the trial court to modify the judgment herein to strike one year from appellant's sentence.

## SUMMARY OF FACTS

We briefly state the evidence in the light most favorable to the jury's verdict. (*People* v. *Ochoa* (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103].) Linda Salcedo began an on-again, off-again dating relationship with appellant in October 1993. Salcedo frequently tried to end her relationship with appellant without success. Appellant would not leave Salcedo alone. In September 1994, Salcedo obtained a restraining order against appellant which was personally served upon appellant in her presence.[3] Appellant left Salcedo alone for a few days, then began to entreat her to resume their relationship. Salcedo testified she was frightened of appellant who told her she would get no help from the police because he had friends on the force. Salcedo called the police approximately three times to report that appellant was violating the restraining order. The police response was to tell Salcedo that they were too busy and if appellant was not hurting her they could not respond. Salcedo felt "helpless" all of the time. She felt "stuck" in the relationship in that she believed that appellant was not going to follow the restraining order. Salcedo reluctantly succumbed to appellant's entreaties even though she was frightened of him. Salcedo accepted a ring from appellant and stopped contradicting him when he told people they were getting married. In mid-February 1995, Salcedo finally broke off the relationship for good and made it clear to appellant she wanted absolutely nothing more to do with him.

Nevertheless, appellant continued his previous pattern of behavior which involved showing up at Salcedo's work every day, driving past her house, calling her on the phone and threatening her and her coworkers. On March 3, 1995, she discovered a tire slashed on her truck as she came out of a nightclub and appellant followed her home. Salcedo called the police but appellant was gone by the time they arrived. On March 8, appellant confronted Salcedo at her work and threatened her again. At this point, Salcedo was able to actively involve the police.

## DISCUSSION

### I.

The court instructed the jury pursuant to section 13710, subdivision (b) as follows: "The terms and conditions of the protection order remain

---

[3]The restraining order was received in evidence as People's exhibit No. 2 and was not made part of the record on appeal. However, we find its essential terms were set forth during closing argument by the prosecutor who quoted liberally from the order without objection from the defense as follows: "[I]f you look at the behavior that is prohibited in these orders you will see specific [*sic*] that [appellant] is to stay at least one hundred yards away from [Salcedo's] residence, from her work place, that he is not to contact her in any way, that he is not to telephone her in any way, that he is not to otherwise disturb her peace in any way or the peace of family household and listed here are her two children also."

enforceable, notwithstanding the acts of the parties, and may be changed only by order of the court." Appellant asserts that this instruction destroyed his defense and deprived him of due process of law.

## A. *Sufficiency of the Evidence*

Appellant's complaint is twofold. █ First, appellant contends that, because Salcedo "maintained and even initiated contact including a sexual relationship with appellant for several months after the restraining order was issued, [his] association with her was not violative of any protective order." We find no merit in this complaint because appellant has failed to point to any evidence that Salcedo willingly initiated or maintained contact with appellant during the period between February 14, 1995, and March 10, 1995, the operative dates in the information. In fact, the evidence is just the opposite. Beginning on February 14, 1995, Salcedo repeatedly informed appellant that she wanted nothing more to do with him and was no longer going to be intimidated by him.

Appellant refused to abide by Salcedo's decision. He appeared at Salcedo's workplace every day, followed her home, or drove past her house as she arrived home, and called her every day. He made threats such as: if you think you are scared now, just wait till I get done with you; if I can't have you no one else will; he would punch out anyone who got in his way; he would hate to see her living in a cardboard box in Los Angeles; not to bother calling the police because he knew a lot of police officers and they would not do anything; and he did not care if he went to jail, he would tell the judge he would keep doing it.

Salcedo's testimony was reasonable, credible, and uncontradicted and, therefore, fully supports the jury's verdict that between February 14 and March 10, 1995, appellant committed the crime of stalking.[4] We find no cause to disturb the jury's verdict. (*People v. Ochoa, supra,* 6 Cal.4th at p. 1206; *People v. Jones* (1990) 51 Cal.3d 294, 314 [270 Cal.Rptr. 611, 792 P.2d 643].)

---

[4]The jury was instructed pursuant to CALJIC No. 9.16.2 that the following elements must be proved in order to convict a person of the crime of stalking in violation of subdivision (b) of section 646.9: "1. A person willfully, maliciously, and repeatedly followed or harassed another person; [¶] 2. The person following or harassing made a credible threat; [¶] 3. The person who made the threat did so with the specific intent to place the other person in reasonable fear for his or her safety or the safety of the immediate family of such person; [¶] 4. A court had previously issued a temporary restraining order, injunction, or any other order prohibiting such behavior against the same other person, and [¶] 5. The temporary restraining order, injunction, other court order [was] in effect at the time of the conduct described in elements 1, 2 and 3."

## B. *Due Process*

Appellant's second complaint is based upon a scenario which has no applicability in this case. (See pt. A., *ante.*) He paints a portrait of a "subject of the restraining order [who] may act in compliance with what he reasonably believes is the victim's desires and then be charged with a crime. This permits the enforcing party to essentially entrap the subject of the order by asking him to come over while the order is in effect and then calling the police . . . ." In appellant's fictional version of events, section 13710, subdivision (b) does not comport with due process requirements of fair notice because the complaining party may enforce the order at will. Appellant rests his argument upon cases holding that "private conduct may become so entwined with governmental action as to become subject to the due process guarantees of the Fourteenth Amendment. [Citation.]" (*Tyler* v. *Children's Home Society* (1994) 29 Cal.App.4th 511, 545 [35 Cal.Rptr.2d 291]; *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146, 152 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803].)

Appellant's reliance on the foregoing cases is misplaced. In *Tyler,* parents sought to rescind their agreements relinquishing their child for adoption because the defendant, a licensed private adoption agency, failed to follow department of social services regulations. The court agreed that the defendant was a governmental agent for purposes of due process analysis because the state delegated to it " '. . . the state's power and obligation to select adoptive parents and to bar all others from the right to adopt the particular child. . . .' " (*Tyler* v. *Children's Home Society, supra,* 29 Cal.App.4th at p. 545.) However, the violation of the state regulations did not contravene federal due process requirements because ". . . the procedures actually afforded plaintiffs were more than adequate to insure that their relinquishments of parental rights were given knowingly, voluntarily and intelligently." (*Id.* at p. 547.)

*Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d 146, held certain provisions of the garageman's lien law (Civ. Code, § 3067 et seq.) violated federal due process requirements. These statutes authorized unpaid automobile mechanics to retain and sell vehicles without prior notice to the vehicles' owners. Although these were private sales, the government was entwined in the sales by statutory procedures which required the Department of Motor Vehicles to administer the sales and to transfer registration of the vehicle to a purchaser without prior hearing.

We conclude that the principle established by the above cited cases is not applicable to statutes which have as their *raison d'être* the protection of

victims from participation or complicity in their own predicament. (See, e.g., §§ 261.5 [unlawful sexual intercourse], 266i, subd. (a) [pandering], and 285 [incest].) There was a time when the participation of victims like Salcedo in abusive relationships seemed inexplicable. Why do they remain in these relationships? Studies by social scientists found an answer in the principle of "learned helplessness." Once a woman (or man)[5] is conditioned to believe that she cannot control what happens to her, her perception becomes reality and she becomes passive, submissive, and "helpless." Even when shown she can control the situation, her behavior is not affected. (Walker, The Battered Woman (1979) pp. 45-51.)[6] Subdivision (b) of section 13710 provides a reasoned response to this psychosocial phenomenon. To hold otherwise would place compliance with lawful court orders in the hands of the very people who often need the most protection from their own impotency.

■ We do not dispute "that the government may not deprive an individual of life, liberty, or property without notice and opportunity to respond, in a manner 'appropriate to the nature of the case.' [Citation.]" (*Coleman* v. *Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1108 [278 Cal.Rptr. 346, 805 P.2d 300].) "In determining applicable due process safeguards, it must be remembered that 'due process is flexible and calls for such procedural protections as the particular situation demands.' [Citation.] . . . [¶] [T]he extent to which due process relief will be available depends on a careful and clearly articulated balancing of the interests at stake in each context." (*People* v. *Ramirez* (1979) 25 Cal.3d 260, 268-269 [158 Cal.Rptr. 316, 599 P.2d 622].) ■ Here, the answer to the dilemma faced by appellant's fictional restrained party does not lie in ignoring the court's order. There are procedures in effect for dissolving protective orders if the subsequent behavior of the protected party casts doubt in the mind of the restrained party as to whether the former has had a change of heart prior to the expiration of the order. (Code Civ. Proc., § 533;[7] Fam. Code, § 6345,

[5]The phenomenon of "learned helplessness," while more prevalent in women, is not unique to women. (See Chavez, *Battered Men and the California Law* (1992) 22 Sw. U. L.Rev. 239, 245-248.)

[6]Evidence Code section 1107 provides that expert testimony on the "battered women's syndrome" is admissible in criminal cases to explain the physical, emotional, or mental effects upon the beliefs, perceptions, or behavior of victims of domestic violence.

[7]Code of Civil Procedure section 533 provides: "In any action, the court may on notice modify or dissolve an injunction or temporary restraining order upon a showing that there has been a material change in the facts upon which the injunction or temporary restraining order was granted, that the law upon which the injunction or temporary restraining order was granted has changed, or that the ends of justice would be served by the modification or dissolution of the injunction or temporary restraining order."

subd. (a).[8]) These procedures protect the due process rights of the parties, the integrity of the court's orders and prevents parties from taking the law into their own hands.

We find no constitutional infirmity in the statute or the jury instruction based thereon.

## II.

### *Request for Resentencing*

■ Appellant's request for a remand for a new sentencing hearing is denied. Appellant did not move to strike his serious felony prior conviction. In fact, at his sentencing hearing his attorney acquiesced in a "second strike" sentence that doubled the four-year high term for the crime of stalking. Thus, there is no indication that the court "misunderstood the scope of its discretion to strike [the] prior felony conviction allegation[] in furtherance of justice pursuant to section 1385[, subdivision (a)] . . . ." (*People* v. *Superior Court* (*Romero*), *supra*, 13 Cal.4th at p. 530, fn. 13.) The sentence imposed by the court was authorized by law (§ 667, subd. (e)(1)) and it is inappropriate for us to consider matters not raised below. "Appellate jurisdiction is limited to the four corners of the record on appeal . . . ." (*In re Carpenter* (1995) 9 Cal.4th 634, 646 [38 Cal.Rptr.2d 665, 889 P.2d 985].)

Nor can we conclude from this record that appellant's defense counsel was incompetent for failing to move to strike the prior conviction. If there were mitigating circumstances, the court could have imposed a four- or six-year prison term by doubling the low or middle term. Instead, after considering the factors in aggravation and mitigation, the court found that appellant "has earned the high term." The court also could have stricken the prison prior(s) found true pursuant to section 667.5, subdivision (b) if there were any mitigating factors. (§ 1170.1, subd. (h).) The court did not avail itself of that option either. On this record, we need not determine whether counsel's performance was inadequate because appellant has failed to show that he was prejudiced by counsel's performance. (*Strickland* v. *Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674, 699-700, 104 S.Ct. 2052]; *People* v. *Sanchez* (1995) 12 Cal.4th 1, 40 [47 Cal.Rptr.2d 843, 906 P.2d 1129].) Relief, if any is to be granted from this sentence, must first be sought in the

---

[8]The Domestic Violence Prevention Act is set forth in division 10 of the Family Code in sections 6200 to 6388. Section 6345, subdivision (a) of the act provides in pertinent part: "In the discretion of the court, the personal conduct, stay-away, and residence exclusion orders contained in a court order issued after notice and a hearing under this article may have a duration of not more than three years, subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party."

trial court in a petition for writ of habeas corpus. (*People* v. *Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 530, fn. 13.)

### DISPOSITION

The judgment is modified by striking one of the one-year enhancements imposed pursuant to Penal Code section 667.5, subdivision (b), and, as modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment accordingly.

Vogel (C. S.), P. J., and Aranda, J.,* concurred.

Appellant's petition for review by the Supreme Court was denied April 16, 1997.

---

*Judge of the Municipal Court for the South Bay Judicial District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.