[No. B057868. Second Dist., Div. Three. Sept. 16, 1993.]

DUNN-EDWARDS CORPORATION et al., Plaintiffs and Appellants, v. SOUTH COAST AIR QUALITY MANAGEMENT DISTRICT et al., Defendants and Respondents.

COUNSEL

Donnelly, Clark, Chase & Smiland, William M. Smiland, Robert M. Newell, Jr., Chistopher G. Foster and Thomas N. Campbell for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich, Acting Assistant Attorney General, Douglas B. Noble and James E. Ryan, Deputy Attorneys General, for Defendants and Respondents.

## OPINION

**KITCHING, J.**—A group of 21 California paint manufacturers, contractors, and dealers (the Paint Companies) sued several air pollution control districts (the Districts), the Air Resources Board (ARB), the California Air Pollution Control Officers Association, Inc. (CAPCOA), and Technical Review Group (TRG), challenging certain amendments to environmental regulations (Rule Amendments) limiting the amount of solvent contained in enamels, lacquers, and paints (architectural coatings). The Paint Companies appeal the order dismissing the action as to TRG after the trial court sustained without leave to amend TRG's demurrers to the 10th, 11th, and 12th causes of action set forth in the petition and complaint (the complaint).[1]

The complaint alleged, in essence, that TRG engaged in rulemaking, which is the exclusive province of the Districts, because the Districts'

---

[1]TRG, the ARB, and CAPCOA demurred to the complaint. The ARB's demurrers were overruled. The demurrers of TRG and CAPCOA were sustained without leave to amend, and

personnel participated in the work of TRG in developing a suggested control measure (SCM) which, with some modifications, was ultimately adopted by the Districts.

The facts alleged in the complaint establish as a matter of law that TRG did not usurp the rulemaking authority of the Districts, and therefore, did not unlawfully interfere with the Paint Companies' contractual relations or deny them due process. The order of dismissal will be affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

The complained-of Rule Amendments were promulgated in 1989 and 1990 by the Districts for the purpose of limiting emissions of volatile organic compounds (VOC's). The present appeal has to do with the role of TRG in the formulation and adoption of the Rule Amendments.

### 1. *The Complaint.*

The introductory paragraphs of the complaint alleged on information and belief that "TRG was created as a result of a memorandum of understanding between ARB and CAPCOA. . . ." In 1977, ARB and CAPCOA "through TRG" developed a "Model Rule" on architectural coatings based on a report published by TRG which recommended imposition of certain limits on the amount of VOC per liter of coating. ARB approved the Model Rule, which was thereafter, upon ARB's recommendation and with some modifications, adopted by the Districts.

The complaint traced the history of the Model Rule through various changes until the years 1988 and 1989, when CAPCOA and ARB "through the TRG" developed an SCM applicable to specialty coatings, i.e., architectural coatings formulated or applied to serve a special purpose, including high-performance coatings, quick-dry coatings, and lacquers.

The Paint Companies alleged certain Districts had adopted the SCM as Rule Amendments, and others threatened to do so, at the time of filing the complaint. They alleged that "[i]n developing the SCM neither CAPCOA, ARB, nor TRG produced any evidence showing the need for, or analyzing the environmental or economic effects of, the . . . Proposed changes relating to High-Performance Coatings." In fact, "[s]ubstantial evidence in the record showed that the . . . proposed changes would have adverse environmental and economic impacts. . . ."

the claims against them were dismissed. The Paint Companies appeal only from the order dismissing TRG.

The Paint Companies alleged the SCM effectively banned quick-dry enamels and pigmented lacquers, and the South Coast Air Quality Management District (SCAQMD) fixed additional limits for clear lacquers that would effectively ban their use in a few years. The actions resulting in the effective banning of lacquers were allegedly taken without any analysis of economic or environmental impact.

Prior to adoption of the SCM, architectural coatings which were otherwise banned were exempted from the ban if sold in quart cans or nonrefillable aerosol containers. TRG's proposal that this small can exemption be eliminated was not adopted by the SCM. However, the SCAQMD, in its Rule 1113 Amendments adopted in 1990, deleted this exemption, allegedly without notice, hearing, study, or debate.

In their 10th cause of action, the Paint Companies alleged each of them is party to contracts involving architectural coatings, and the Rule Amendments adopted by the Districts to implement the SCM impair their contract obligations.

The 11th cause of action alleged the Rule Amendments constitute "technology-forcing provisions" which were adopted without the customary safeguards regarding selection of effective dates, and repeal or amendment in the event the predicted technological developments do not occur by the effective dates. Therefore, the Rule Amendments deprive the Paint Companies of property in violation of the due process clause of the California Constitution.

In both the 10th and 11th causes of action, the Paint Companies alleged that "CAPCOA and ARB, through the TRG, drafted, promulgated, and published the SCM, . . . As had occurred [in connection with the adoption of the Model Rule in 1977, and its revision in 1983], the SCM was approved in substantial part by the Districts." They alleged certain members, officers, directors and designated representatives of CAPCOA and TRG "who participated in drafting, promulgating, and publishing the SCM also participated in promoting and approving the Rule Amendments as staff members, officials, or consultants to the Districts. In engaging in such conduct, CAPCOA [and TRG] acted as a conduit or medium through which governmental or public policy was created and implemented. Accordingly, CAPCOA, as well as the other defendants [including TRG], engaged in state action" violative of the impairment of contracts and due process clauses of the California Constitution.

In their 12th cause of action, the Paint Companies alleged the following: The Districts have, with one exception not relevant here, sole authority to

adopt rules having the force and effect of law governing nonvehicular sources of pollution. This quasi-legislative rulemaking power was delegated to the Districts by the California Legislature. ARB, TRG, and CAPCOA have no quasi-legislative rulemaking authority over architectural coatings. "The proceedings in which CAPCOA and ARB, through TRG, draft, promulgate, and publish model rules and suggested control measures, including those relating to the Model Rule, its revision, and the SCM, . . . lack[] the procedural safeguards present in an open political process." Neither the organizations nor their members are accountable to the public. Their conduct with respect to rulemaking is not authorized by statute or District regulation or subject to any standards, guidelines or restrictions to insure against abuse of the powers exercised by them. The SCM and Rule Amendments are invalid and unenforceable in that they violate the limitations on the delegation of legislative powers inherent in the California Constitution.

In each of the 10th, 11th, and 12th causes of action, the Paint Companies alleged "[t]he actions of TRG and CAPCOA, both in design and in effect, far transcended mere advice to the governmental agencies of the type which any member of the public was free to offer. TRG and CAPCOA functioned as de facto arms of the government. Each exercised quasi-governmental powers, and was substantially implicated in the adoption of the Rule Amendments. . . . By virtue of the involvement of such defendants, each of the Districts abdicated substantial portions of its legal responsibility with respect to finding the relevant facts, identifying the possible regulatory alternatives, and estimating the costs and benefits of each. Accordingly, the information-gathering and decision-making processes required by statute, the Constitution, and sound practice were substantially distorted."

The Paint Companies sought both declaratory and injunctive relief.

2. *The Demurrers.*

On March 2, 1990, the Paint Companies filed their original petition for writ of mandate and complaint for declaratory relief. A demurrer of CAPCOA to the 10th, 11th, and 12th causes of action was sustained with leave to amend on May 4, 1990.

The Paint Companies filed amendments to the complaint on June 18, 1990. On August 21, 1990, the trial court sustained the demurrers of TRG and CAPCOA to the same three causes of action, again with leave to amend.

Further amendments to the complaint were filed in September 1990. TRG and CAPCOA again demurred, and the trial court ordered the Paint Companies to file the present restated petition and complaint encompassing their

amendments. TRG and CAPCOA demurred once again, and their demurrers were sustained without leave to amend as to the 10th, 11th, and 12th causes of action. The present appeal is from the ensuing order of dismissal as to TRG.

## CONTENTIONS

The Paint Companies contend the 10th, 11th, and 12th causes of action set forth in their complaint allege facts which, if proved, will establish that TRG engaged in "state action" and thereby interfered with their contractual relations and deprived them of due process.

## DISCUSSION

### 1. *Standard of Review.*

"The function of a demurrer is to test the sufficiency of a pleading by raising questions of law. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.]" (*California Federal Bank* v. *Matreyek* (1992) 8 Cal.App.4th 125, 130 [10 Cal.Rptr.2d 58].) We treat the demurrer as admitting all material facts properly pleaded. We also consider matters which may be judicially noticed. Facts that may be implied or inferred from those expressly alleged are also taken as true. (*C & H Foods Co.* v. *Hartford Ins. Co.* (1984) 163 Cal.App.3d 1055, 1062 [211 Cal.Rptr. 765].)

"In reviewing an order sustaining a demurrer without leave to amend, 'the allegations of the complaint must be liberally construed with a view to attaining substantial justice among the parties.' [Citation.] If . . . the pleading liberally construed can state a cause of action, the trial court should not sustain a demurrer without leave to amend. [Citation.]" (*Heckendorn* v. *City of San Marino* (1986) 42 Cal.3d 481, 486 [229 Cal.Rptr. 324, 723 P.2d 64].)

### 2. *The Districts Are Responsible for Promulgation of Rules and Regulations Concerning Air Pollution.*

ARB is the state agency charged with coordinating efforts to attain and maintain ambient air quality standards, and to conduct research into the causes of and solution to air pollution. (Health & Saf. Code, § 39003.)[2]

The state Legislature has determined that local and regional authorities have the primary responsibility for control of air pollution from all sources other than emissions from motor vehicles (§ 40000); hence, the formation of the Districts, which are empowered to adopt and enforce rules and regula-

---

[2]Unless otherwise indicated, all further statutory references are to the Health and Safety Code.

tions designed to achieve and maintain federal and state ambient air quality standards for the areas under their jurisdiction. (§ 40001.)

Before adopting, amending, or repealing any rule or regulation, a District board must hold a public hearing thereon. (§ 40725, subd. (a).) Notice of the time and place of the hearing must be given to the ARB, and published in the District, at least 30 days prior to the hearing. (§ 40725, subd. (b).) The notice must invite public comment. (§ 40725, subd. (c).)

"The public hearing held pursuant to Section 40725 shall provide for the submission of statements, arguments, or contentions, either oral, written, or both." (§ 40726.)

### 3. The Districts Did Not Improperly Delegate Their Rulemaking Powers to TRG.

The essential allegation of the subject causes of action is that, because members of TRG who participated in drafting and proposing the SCM also participated in promoting and approving the Rule Amendments as staff members, officials, or consultants to the Districts, TRG effectively usurped the Districts' rulemaking function, thereby engaged in "state action," and adopted the Rule Amendments without complying with the statutory notice and hearing requirements. Or, put another way, the Districts unlawfully delegated their rulemaking powers to TRG.[3]

### a. TRG Did Not Engage in "State Action."

In their briefs on appeal, the Paint Companies focus on the concept of "state action," citing *Adams* v. *Department of Motor Vehicles* (1974) 11 Cal.3d 146 [113 Cal.Rptr. 145, 520 P.2d 961, 64 A.L.R.3d 803], and *Appel* v. *Beyer* (1974) 39 Cal.App.3d Supp. 7 [114 Cal.Rptr. 336]. *Adams* held unconstitutional the garageman's labor and materials lien law (Civ. Code, §§ 3068, subd. (a), 3071, 3072, 3073, 3074) insofar as it permitted the involuntary sale and transfer of a vehicle by a garageman to satisfy his claim for repairs without affording the owner an opportunity for a hearing. (*Adams* v. *Department of Motor Vehicles, supra,* 11 Cal.3d at p. 152; accord, *Martin* v. *Heady* (1980) 103 Cal.App.3d 580, 586-589 [163 Cal.Rptr. 117], regarding the state aircraft lien law.) *Appel* v. *Beyer, supra,* 39 Cal.App.3d Supp. 7, held housing projects carried out by joint participation of private enterprise and government under federal statutes involve state action requiring that due process of law, including notice and proof of good cause for eviction, must

---

[3]We take judicial notice of the memorandum of understanding between ARB and CAPCOA in which the function and membership of TRG are described. (Evid. Code, § 452; *E. H. Morrill Co.* v. *State of California* (1967) 65 Cal.2d 787, 794-795 [56 Cal.Rptr. 479, 423 P.2d 551].)

be accorded a tenant who holds over after expiration of the tenancy term. In each case, governmental involvement in the transactions caused them to fall within the scope of due process requirements inhibiting governmental action.

It is true, as the Paint Companies claim, that this case also involves state action. However, the Districts were the actors, and, unlike the situations described in the above cited cases, there is nothing in the complaint to suggest the Paint Companies were deprived of notice and a hearing prior to the Districts' adoption of the rule Amendments.

### b. *TRG Acted in an Advisory Capacity to ARB and the Districts.*

In *Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408 [261 Cal.Rptr. 384, 777 P.2d 157], the Western States Petroleum Association, a trade association, challenged the Monterey Bay Unified Air Pollution Control District's (Monterey District's) rule 1000, which delegated to the district's air pollution control officer the responsibility for determining whether to designate a substance a " 'toxic air contaminant' " or a " 'carcinogenic toxic air contaminant.' " A list of 23 substances the pollution control officer designated as carcinogenic toxic air contaminants, and more than 125 substances the officer designated as toxic air contaminants, was attached to rule 1000 when it was adopted. (49 Cal.3d at p. 415.)

The Monterey District's rule 1000 empowered the pollution control officer to determine whether the control device or technique commonly used for similar types of equipment was a " 'reasonable control technology' " for proposed new or modified stationary sources of toxic air contaminants. For proposed sources of carcinogenic toxic air contaminants, rule 1000 required installation of the " 'best control technology,' " i.e., "the most effective emission control device or technique successfully used on similar sources and determined by the control officer to be cost effective." (*Western Oil & Gas Assn. supra*, 49 Cal.3d at p. 415.)

The association contended the Monterey District's rule 1000 was invalid under sections 40725 through 40728 because the rule granted too much authority to the pollution control officer. The court rejected this contention. With respect to the association's argument that identification by the control officer of a substance as a toxic air contaminant constitutes rulemaking without public notice and hearing, the court stated: "The association's argument ignores the fact that the control officer's list of substances to be regulated was an attachment to Rule 1000 and was available for public comment when the rule was adopted. In other words, the district itself, not the control officer, adopted the list as part of Rule 1000. The association does not contend Monterey District violated any of the statutory rulemaking provisions when it adopted Rule 1000. Thus, there is no basis for the

association's argument that the control officer was allowed to engage in rulemaking. He merely assisted in the preparation of an attachment to a rule that the district adopted. This assistance did not violate the statutory requirements (§§ 40725-40728) for rulemaking." (*Western Oil & Gas Assn., supra,* 49 Cal.3d at p. 427, fn. omitted.)

The court went on: "If the argument is that the district delegated too much discretion to its control officer before adopting the rule, we reject that argument as well. The association fails to explain why the district could not delegate to its control officer the technical task of preparing the list for the district's adoption. Someone had to do the initial, technical work of identifying the substances that the district subsequently determined should be identified under Rule 1000." (*Western Oil & Gas Assn., supra,* 49 Cal.3d at p. 427.)

In our case, the Paint Companies do not allege in the 10th, 11th, and 12th causes of action that the Districts failed to comply with the notice and hearing requirements in adopting the Rule Amendments. They complain only of the role of TRG in proposing amendments, based on the participation of District personnel in promulgation of the SCM which was subsequently adopted by the Districts, with some modifications, as the complained-of Rule Amendments.[4] The situation of those individuals is similar to that of the pollution control officer in *Western Oil & Gas Assn., supra,* 49 Cal.3d 408. There is nothing in the statutory scheme prohibiting the Districts' personnel from pooling their knowledge and experience to arrive at a consensus concerning the need for and content of *proposed* rule changes, and referring their suggestions through ARB to the various Districts. Moreover, there is nothing in the causes of action with which we are concerned to suggest the Districts thereafter failed to comply with the notice and hearing requirements prior to adoption of the Rule Amendments.[5]

[4]The Paint Companies cite the Federal Advisory Committee Act (FACA) (5 U.S.C. Appen. 2, § 1 et seq.) and cases decided thereunder, stating, "if and to the extent TRG develops regulations for EPA [the Environmental Protection Agency] as well as for the districts, it is bound to comply with FACA." The Paint Companies did not allege, and do not contend, that FACA applies to TRG in this case.

[5]The Paint Companies' cases (e.g., *Allen v. California Board of Barber Examiners* (1972) 25 Cal.App.3d 1014 [102 Cal.Rptr. 368, 54 A.L.R.3d 910]; *Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1 [97 Cal.Rptr. 431], criticized on another point in *Laupheimer v. State of California* (1988) 200 Cal.App.3d 440, 455 (246 Cal.Rptr. 82); *Blumenthal v. Board of Medical Examiners* (1962) 57 Cal.2d 228 [18 Cal.Rptr. 501, 368 P.2d 101]; *State Board v. Thrift-D-Lux Cleaners* (1953) 40 Cal.2d 436 [254 P.2d 29]) have to do with the state Legislature's delegation of regulatory power to agencies composed of interested members of the regulated industries without imposing standards or safeguards adequate to prevent abuse. Absent the required safeguards, such grants of authority constitute unconsti-

### 4. *The Paint Companies' Remedy, If Any, Is Against the Districts, and Not TRG.*

■ In their 10th cause of action, the Paint Companies complain that the Rule Amendments interfered with their contractual relations in some unspecified manner. The Rule Amendments were enacted by the Districts, and could only be invalidated through an action against the Districts, and not TRG.

In their 11th cause of action, the Paint Companies allege that technology-forcing provisions of the Rule Amendments deprived them of property in violation of the due process clause of the California Constitution, and were therefore invalid and unenforceable. Only the Districts had the power to, and did, enact the Rule Amendments.

■ With respect to the 12th cause of action, we have determined there was no unlawful delegation by the Districts of their rulemaking authority, and therefore no due process violation in their adoption of the Rule Amendments.

TRG's demurrers to the 10th, 11th, and 12th causes of action were properly sustained without leave to amend.

### DISPOSITION

The order of dismissal is affirmed.

Croskey, Acting P. J., and Hinz, J., concurred.

---

tutional delegations of legislative power. In our case, the Legislature's delegation of power is to the Districts, not TRG, whose role is advisory only, and whose members do not come from the regulated industry. In *Sessions Tank Liners, Inc.* v. *Joor Mfg., Inc.* (C.D.Cal. 1991) 786 F.Supp. 1518, 1527-1528, an economically interested entity responsible for an anticompetitive restraint which was merely rubber-stamped by the responsible public agencies was not immune from liability to its competitors for the harm caused them by the restraint. In our case, the Paint Companies do not allege that TRG or any of its members is their competitor. Also, by alleging the SCM was adopted by the Districts with some modifications, the Paint Companies concede the SCM was not merely rubber-stamped by the Districts.