Ana M. ROCHEZ, Plaintiff,

v.

Kenneth MITTLETON, Robert T. Johnson, in his official capacity as District Attorney of Bronx County, the City of New York, John Does 1–3, and Jane Roe, the latter John Does and Jane Roe being fictitious names to describe persons whose true identities are presently unknown to plaintiff, except to the extent that they are Court Officers assigned to the Criminal Court of the City of New York for Bronx County, who are jointly and severally liable for the damages alleged herein, Defendants.

No. 93 Civ. 0125 (RWS).

United States District Court,
S.D. New York.

Dec. 20, 1993.

Orenstein Musoff & Orenstein, P.C., New York City (Keith S. Orenstein, Michael J. Coyle, of counsel), for plaintiff.

Robert Abrams, Atty. Gen. of the State of New York, New York City (Mark G. Peters, Asst. Atty. Gen., of counsel), for defendant Kenneth Mittleton.

O. Peter Sherwood, Corp. Counsel of the City of New York, New York City (Gabriel Taussig, Robin Binder, Asst. Corp. Counsel, of counsel), for City defendants.

## OPINION

SWEET, District Judge.

The City and the District Attorney (collectively the "Municipal Defendants") have moved for judgments pursuant to Rule 12(c) of the Federal Rules of Civil Procedure to dismiss the complaint of Plaintiff Ana M. Rochez ("Rochez"), brought pursuant to 42 U.S.C. § 1983 against Court Officer Kenneth Mittleton ("Mittleton"), four other unnamed individual defendants designated in her complaint as John Does 1–3 and Jane Roe (together with Mittleton, the "Court Officer Defendants"), the City of New York (the "City"), and the Bronx District Attorney Robert Johnson ("Johnson" or the "District Attorney"). In the alternative, the defendants have moved for an order pursuant to Rules 42 and 26(c) of the Federal Rules of Civil Procedure bifurcating the action against the Municipal Defendants and staying discovery. For the following reasons, the motion

for judgment is granted and the complaint is dismissed.

### The Parties

Plaintiff Rochez is a resident of the State of New York and resides within the City of New York.

Defendant Kenneth Mittleton is a resident of the State of New York (the "State") employed by the State as a Court Officer assigned to the Criminal Court of the City of New York for Bronx County (the "Criminal Court").

Defendant the City is a municipal corporation of the State of New York and is a "person" for the purposes of suit brought under 42 U.S.C. § 1983. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Defendant Johnson is the duly-elected District Attorney of Bronx County. Although the District Attorney is a county rather than a city official, the District Attorney of each of the five counties in the City is considered to be a municipal policy maker for purposes of municipal liability under 42 U.S.C. § 1983. *Walker v. City of New York*, 974 F.2d 293, 301 (2d Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1387, 122 L.Ed.2d 762 *and cert. denied*, — U.S. —, 113 S.Ct. 1412, 122 L.Ed.2d 784 (1993). Johnson and the City are collectively referred to as the "City Defendants."

Defendants John Does 1–3 (the "John Does") and Jane Roe ("Roe") are certain male and female court officers employed by the State as court officers assigned to the Criminal Court.

### The Facts

The City Defendants have conceded the following facts solely for purposes of this motion:

On January 8, 1992, Rochez went to the New York Criminal Court located at 215 East 161st Street in the Bronx, where Mittleton and the other defendants were employed, to file a criminal complaint against a person who had stolen property from her apartment. Upon arriving at the Criminal Court, Rochez approached Mittleton and requested him to direct her to the appropriate person who could assist her, and Mittleton inaccurately

directed her to sit in a waiting area in the Criminal Court. After waiting in the area to which Mittleton had directed her for more than an hour, Rochez was informed she was not in the right place for her purpose.

Rochez returned to Mittleton and asked him why he had given her misinformation, upon which Mittleton began to abuse her verbally. Rochez proceeded to protest, and Mittleton arrested her and handcuffed her without provocation or justification and with full knowledge that he did not have probable cause to arrest her. After being detained for some hours by Mittleton and the other court officers, Rochez was released upon being issued a summons prepared by Mittleton falsely accusing her of disorderly conduct, although the City alleges she must have been given an appearance ticket.[1] The summons or ticket required her to appear in the Summons All Purpose ("SAP") Part of the Criminal Court on February 10, 1992.

On February 10, 1992, Rochez appeared with counsel as directed at the SAP Part of the Criminal Court before Judicial Hearing Officer Dennis Edwards, who was not an active Judge of the Criminal Court. After Rochez objected to proceeding before Dennis Edwards but announced her readiness to proceed before an appropriate Judge, the case was adjourned to February 21, 1992. On February 21, 1992, Rochez appeared with counsel before the Honorable Michael R. Sonberg, who dismissed her case before arraignment. Rochez alleges that at no time during the proceedings on either day did the District Attorney, or any person purporting to be authorized to act on his behalf, make any appearance in the matter. Rochez then filed this lawsuit claiming violations of her constitutional rights under the Fourth Amendment and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment in addition to one count each of common-law false arrest and malicious prosecution.

Rochez alleges that the District Attorney and his official predecessors in office have established or permitted a municipal policy under which private citizens, as complaining witnesses, commence and prosecute crimes in the SAP Part of the Criminal Court without the specific knowledge, consent or supervision of the District Attorney or any of his appointed and trained designees (the "Municipal Policy"). She alleges that Mittleton issued her the appearance ticket pursuant to and in reliance on the Municipal Policy, and that therefore the Municipal Policy proximately caused the alleged violations of her constitutional rights.

The City Defendants moved to dismiss Rochez's complaint on April 14, 1993. The motion was argued on June 2, 1993, and considered fully submitted as of that date.

***Discussion***

■ A motion for judgment on the pleading is decided according to the same standards as a motion to dismiss. *Hodge v. Ruperto,* 739 F.Supp. 873, 876 (S.D.N.Y. 1990); *Watts v. New York City Police Dep't,* 724 F.Supp. 99, 103 (S.D.N.Y.1989). In reviewing a motion to dismiss on the pleadings, "the factual allegations in the complaint must be accepted as true, and all reasonable inferences must be drawn in favor of the plaintiff," *Walker,* 974 F.2d at 298 (quoting *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir. 1988)). A district court should grant a motion to dismiss only if, after viewing plaintiff's allegations in this favorable light, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Ricciuti v. New York City Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991)). The City Defendants allege Rochez cannot prove such a set of facts because she has failed to state a claim demonstrating the liability of the City Defendants.

---

1. An appearance ticket is a "written notice issued and subscribed by a police officer or other public servant authorized by ... law to issue the same, directing a designated person to appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense." N.Y. Criminal Procedure Law ("C.P.L.") § 150.10 (McKinney 1992). Court officers are peace officers authorized by law to issue appearance tickets. C.P.L. §§ 2.10(21), 2.20(1)(d). A notice that conforms to the definition of an appearance ticket is an appearance ticket, even if it bears a legend designating it a "summons," C.P.L. § 150.10, for a true summons must be subscribed by a judge, C.P.L. § 130.10.

Title 42, § 1983 of the United States Code provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

■ The elements of a § 1983 cause of action have been summarized as follows: The plaintiff must prove that (1) a person (2) acting under color of state law (3) subjected the plaintiff or caused the plaintiff to be subjected (4) to the deprivation of a right secured by the Constitution or laws of the United States. *Oklahoma City v. Tuttle*, 471 U.S. 808, 829, 105 S.Ct. 2427, 2439, 85 L.Ed.2d 791 (1985) (Brennan, J., concurring). After *Monell*, a municipality is a "person" to whom § 1983 applies. The City Defendants have ceded, solely for the purposes of this motion, that the Municipal Policy exists and is unconstitutional, and that the court officer defendants would not have violated Rochez's constitutional rights but for their knowledge of and reliance on the Municipal Policy. *See* Def.'s Mem. at 9–10.

The remaining question is causation. Rochez must allege facts to show how the Municipal Policy "subjected" or "caused her to be subjected" to a deprivation of a constitutional right. *See Tuttle*, 471 U.S. at 829–30, 105 S.Ct. at 2439–40. Rochez alleges that Mittleton did not initiate his private criminal prosecution of her as part of his duties as a Court officer, but as a private citizen determined to hassle and annoy her, who knew he could "get away with it" because he was aware that the District Attorney refused to exercise any supervision at all:

The mere fact that Mittleton was a peace officer did not, of course, authorize him to falsely accuse, arrest, and maliciously prosecute Ms. Rochez nor did his peace officer status make this any less of a private prosecution. Mittleton was the complainant who stated under penalty of perjury that he had observed Ms. Rochez commit the offense. As such he was no less an interested complainant than any other

complainant who did not have a badge.... Mittleton's peace officer status did not, and could not, cure this fundamental defect [the unconstitutional policy] in his private prosecution of Ms. Rochez.

Pl.'s Br. at 3.

Rochez alleges that, as a proximate result of the Municipal Policy, tens of thousands of prosecutions of crimes and offenses, including the action brought against her by Mittleton, have been unjustly commenced, because an action under this system may be brought by any "complaining witness," regardless of the inherent conflicts of interest or lack of the complaining witness' appropriate training or motive to serve as a prosecutor.

The City Defendants allege that, since the individual court officers who allegedly violated plaintiff's constitutional rights are not employed by the City of New York or the Bronx District Attorney's Office, but are employed by the State's Office of Court Administration, the maintenance of the municipal policy could not have proximately caused Rochez's injuries:

[W]hat is alleged here is not the application of an unconstitutional municipal policy by city employees, but the reliance on an unconstitutional municipal policy by non-city employees who had no authority to carry out municipal policy and over whom city defendants had no control ... [A] municipality simply cannot be held liable for the acts of non-employees over whom it has no control, even where its unlawful policies or practices provide the motive or opportunity for the non-employees' misconduct.

Defs.' Reply Br. at 3.

Rochez argues, however, that municipal liability in this case is based, not indirectly on Mittleton's actions, but directly on Johnson's policy of abdication of his legal responsibility to conduct and to supervise all criminal prosecutions, and necessarily to prevent others from carrying on private prosecutions without his informed knowledge, consent and supervision. Rochez claims that Johnson's policy of abdication of responsibility proximately caused her injuries, *see* Pl.'s Br. at 14, although she concedes that it was Court Offi-

cers that "physically participated in causing [her] constitutional injury," Pl.'s Br. at 13. Proximate cause is established in this instance, Rochez claims, because the municipal policy permits private criminal prosecutions by interested, putative complaining witnesses, without Johnson's supervisor, notwithstanding Johnson's knowledge to a "moral certainty" that the reasonably foreseeable result of such prosecutions would be the depravation of the constitutional rights of the persons accused in those prosecutions. These circumstances, according to Rochez, "amount[ ] to a deliberate indifference to the constitutional rights of those persons accused . . . so as to render the City defendants liable under the principles of *Monell v. New York City Dept. of Social Services.*" Pl.'s Br. at 13.

■ For Rochez's § 1983 claims to be properly plead under *Monell*, we must find that a policy of deliberate indifference of a municipal policy maker to his or her responsibilities can proximately cause violations of § 1983, even though individuals not employed by the municipality physically carry out the alleged deprivations of constitutional rights.

Deliberate indifference to the faulty execution of an otherwise constitutional policy (i.e., prosecution of offenses) is language taken from the Supreme Court's opinion in *Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989):

Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. . . . Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Canton,* 489 U.S. at 389, 109 S.Ct. at 1205.

Deliberate indifference liability under *Canton,* however, applies when the constitutional tort is proximately caused by improperly trained employees, which is not the case here. Rochez herself states her suit does not allege that the District Attorney has failed to train or supervise his staff in the correct way to conduct a prosecution:

[T]his is not a *City of Canton*-type case, where liability is sought to be imposed for a policymaker's failure to train his subordinates. Here . . . municipal liability is based directly on the conduct of DA Johnson . . . whose own policy of abdication of his legal responsibility to conduct and to supervise all criminal prosecutions, and necessarily to prevent others from carrying on private prosecutions without his informed knowledge, consent, and supervision, proximately caused Ms. Rochez' constitutional injury. . . . His failure to prevent such prosecutions amounted to nothing less than deliberate indifference to the constitutional rights of those accuseds.

Pl's. Br. at 14–15.

■ Rather than grounding her suit on *Canton* failure to train allegations, Rochez asks us to find that Johnson's deliberate indifference to his prosecutorial duties was itself the proximate cause of her injuries. *Martinez v. California,* 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980), involved a suit by the survivors of a 15–year–old girl who had been murdered by a parolee. The plaintiffs argued that the state officials responsible for the parole-release decision were liable under § 1983 for the damages caused by the parolee. In making their parole-release decision, the parole board was fully informed about the parolee's violent history and the likelihood that he would commit another violent crime. Also, in making their release determination, they failed to observe procedural formalities. The California trial court sustained the defendants' demurrer to the complaint.[2]

---

2. Under California law, the demurrer performs the same function as a motion for judgment on the pleadings. In considering a demurrer, the material allegations of the complaint must be accepted as true. *See Gami v. Mullikin Medical Ctr.,* 18 Cal.App.4th 870, 876, 22 Cal.Rptr.2d 819 (1993). A demurrer is not sustained under California law unless, under a liberal construction of the pleadings, they fail to state a cause of action. *Dunn–Edwards Corp. v. South Coast Air Quality Management Dist.,* 19 Cal.App.4th 536, 542, 24 Cal.Rptr.2d 99 (1993).

**1080**

The Court assumed, for purposes of reviewing the sustaining of the defendants' demurrer, that the appellees knew, or should have known that the release of the parolee created a clear and present danger that he would commit further violent acts, and that their actions in releasing him were negligent, reckless, willful, wanton, and malicious. The plaintiffs claimed that the Parole Board's parole-release decision had subjected the decedent to a deprivation of her life without due process of law in violation of § 1983.

The Court held that, although the release decision was state action, the actions of the parolee could not be fairly characterized as state action, and that this was true regardless of whether, as a matter of state law, the actions of the Parole Board could be said to have proximately caused her death.[3] Where the individual who physically caused the violation of the decedents rights was not an agent of the Parole Board and the Parole Board was not aware that the decedent, as distinguished from the public at large, faced any danger, the decedent's death was too remote a consequence of the parole Board's actions to make it liable under § 1983. *Martinez,* 444 U.S. at 284–85, 100 S.Ct. at 558–59.

Again, in *D.T. v. Independent School District No. 16,* 894 F.2d 1176 (10th Cir.), *cert. denied,* 498 U.S. 879, 111 S.Ct. 213, 112 L.Ed.2d 172 (1990), the Tenth Circuit reversed a trial court's denial of a defendant school board's motion for a directed verdict in a § 1983 action brought against a school district by a group of elementary school students who had been molested by a school teacher during summer vacation. The trial court had permitted the jury to treat the school district's procedure in hiring as a "policy" for purposes of showing a nexus between the district and the alleged violations. Under the plaintiffs' theory in *D.T.,* the school district officials responsible for hiring the alleged molester were the relevant "state actors," and the issue for the jury was whether these officials' conduct in the procedure employed in the investigation and hiring of the alleged molester had caused the plaintiffs' injuries. *See D.T.,* 894 F.2d at 1187–88. Citing *Martinez,* the Tenth Circuit found that the acts of molestation practiced by the off-duty teacher were too remote a consequence of the school district's hiring policies to ground liability under § 1983. *Id.* at 1189.

The similarities between the arguments of the plaintiff in the present case and those of the plaintiffs in *Martinez* and *D.T.* are too striking to ignore. In those cases, the plaintiffs argued that municipal policies proximately caused injuries that were physically caused by individuals unassociated with the state. In the present case, Rochez acknowledges that the court officers who physically caused her injuries were not state employees. She contends, however, that Johnson's policy of failing to supervise prosecutions brought by interested complaining witnesses proximately caused her injuries. Under the precedent of *Martinez,* however, this causal link is too tenuous to support liability under § 1983.

Although Rochez claims that the City Defendants' liability "is predicated directly upon the deliberately indifferent conduct of DA Johnson ... and not upon any notion of vicarious liability," Pl.'s Br. at 16, it is worth noting that she has not stated a claim by which the City Defendants could be vicariously liable under § 1983 for the actions of the Court Officer Defendants.

In *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982), the Supreme Court set out a two-pronged approach for determining when the action of private parties could be attributable to the state for purposes of § 1983 liability:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with that deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he

---

**3.** This holding indicates that the standard for finding proximate cause in a § 1983 action is more exacting than that under traditional tort theories of liability. *See* John B. Kassel, *Note:* *Defining the Scope of the Due Process Right to Protection,* 70 *Cornell L.Rev.* 940, 953 n. 92 (1985).

has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Lugar,* 457 U.S. at 937, 102 S.Ct. at 2746.

Because the City Defendants have ceded the existence and the unconstitutionality of the Municipal Policy for the purposes of this motion, the first *Lugar* principle is established: the Court Officer Defendants allegedly acted pursuant to a rule of conduct imposed by the District Attorney.

■ Under the second *Lugar* principle, however, Rochez fails to state a claim. She fails to allege how the unsupervised private prosecutors are "acting together with" state officials or are "otherwise chargeable" to the City Defendants. Action by a private party pursuant to a state law, without "something more," is not sufficient to justify the characterization of that party as a state actor. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754.

In *Lugar,* the Court indicated that whether the acts of private parties can be "fairly attributable" to the state is a fact-bound inquiry. *Lugar,* 457 U.S. at 939, 102 S.Ct. at 2754; *see also Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961) ("Only by sifting facts and weighing circumstances can the non-obvious involvement of the State in private conduct be attributed its true significance."). While none of the tests developed in prior case law can obviate this Court's responsibility to determine whether the actions of the Court Officer Defendants are "fairly attributable" to the state, these tests provide some indication that they are not so attributable.

■ The private citizens prosecuting these cases are not acting jointly with the state officials, for the gravamen of Rochez's complaint is that the state officials are not acting at all. *See Lugar,* 457 U.S. at 941, 102 S.Ct. at 2755 (private party's joint participation with state officials in seizure of property sufficient to characterize private party as "state actor" for purposes of the Fourteenth Amendment.). Under the "symbiotic relationship" test established in *Burton v. Wilmington Parking Auth.,* 365 U.S. 715, 725, 81 S.Ct. 856, 861, 6 L.Ed.2d 45 (1961), an action will be considered that of the State if the State has "so far insinuated itself into a position of interdependence with [the acting party] that it must be recognized as a joint participant in the challenged activity. . . ." Again, since Rochez's complaint alleges that state officials are absent from prosecutorial decisions, Rochez's allegations can not meet the *Burton* standard. State law did not compel the Court Officers' prosecution of Rochez, *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 170, 90 S.Ct. 1598, 1615, 26 L.Ed.2d 142 (1970), and the state's mere acquiescence in a private action does not convert that action into state action. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164, 98 S.Ct. 1729, 1737, 56 L.Ed.2d 185 (1978).

■ The Supreme Court has also held that the actions of a private entity may be deemed state action when that party exercises powers that are "traditionally the exclusive prerogative of the State." *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 455, 42 L.Ed.2d 477 (1974). The primary inquiry under this test is whether the delegated function is exclusively the State's. *See Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 157–59, 98 S.Ct. 1729, 1733–35, 56 L.Ed.2d 185 (1978). Private prosecutors, while certainly not the norm, have been used in a variety of settings and jurisdictions in this country. *See New Jersey v. Imperiale,* 773 F.Supp. 747 (D.N.J.1991) (discussing variety of jurisdictions employing private prosecutors); *Young v. United States ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) (holding that courts have authority to appoint private attorneys to prosecute contempt actions). The prosecutorial function is not, therefore, the exclusive prerogative of the state.

The only involvement of the City that Rochez can allege in the present case is that private individuals are initiating prosecutions pursuant to the Municipal Policy. Rochez does not allege that the District Attorney's office has a policy of conducting unconstitutional prosecutions itself; according to her, as soon as the District Attorney's office gets involved, the unconstitutional behavior ceases. Nor does she allege that the DA's office

ratifies any unconstitutional prosecutions brought by private citizens, thus adopting the unconstitutional behavior. She simply states the District Attorney is negligent in permitting a policy of allowing private citizens to bring unconstitutional prosecutions. Rochez has failed to allege the "something more," beyond action pursuant to the Municipal Policy, which might make the actions of private prosecutors in this case attributable to the City. Since the municipal policy can not, as a matter of law, have proximately caused Rochez's injuries and because the actions of the Court Officer Defendants are not fairly attributable to the City, Rochez's complaint must be dismissed. Given the dismissal of Rochez' complaint, the court need not reach the issue of bifurcation.

### Conclusion

For the foregoing reasons, the Municipal Defendants' motion to dismiss is granted.

It is so ordered.